OPINION OF THE COURT
Karen Morris, J.
Defendant is charged with failing to keep right in violation of Vehicle and Traffic Law § 1120 (b). Under the circumstances, it appears he was charged with the incorrect section of the statute. As a result I find defendant not guilty.
Defendant is charged with violating subdivision (b) of Vehicle and Traffic Law § 1120. That subdivision reads as follows: *944 “[U]pon all roadways, any vehicle proceeding at less than the normal speed of traffic at the time and place and under the conditions then existing shall be driven in the right-hand lane then available for traffic”.
The defendant pleaded not guilty and a trial was held. The People’s case consisted of the testimony of Trooper Rowe. He testified as follows: on July 3, 1997 at 3:00 p.m. he observed defendant’s car heading southbound in the left lane of a three-lane expressway; the speed limit on the expressway was 55 miles per hour; using a calibrated speedometer, the Trooper paced defendant’s vehicle for about a mile and a half; the speed of defendant’s car was 55-56 miles per hour; defendant was travelling slower than other traffic on the expressway; defendant had many opportunities to move to other lanes during the time the officer paced the defendant; after stopping defendant the Trooper asked Mr. Ilieveski if he knew why the Trooper stopped him; defendant responded, “No, I know I wasn’t speeding.”
Defendant testified as follows: he was travelling at 55 miles per hour; while the Trooper was pacing defendant, the Trooper was positioned to defendant’s right and therefore defendant could not move to either of the lanes to his right; if he accelerated to pass the Trooper and then move to the right, defendant feared he would be stopped for speeding; the officer, upon stopping defendant, inquired as to defendant’s ethnicity leading defendant to believe that the issuance of the ticket was a discriminatory act.
Both parties agree that defendant was travelling at a legal rate of speed. To find defendant guilty of the violation charged—Vehicle and Traffic Law § 1120 (b)—when he was travelling within the speed limit, albeit at the maximum, would require that I interpret the statute to mandate an incongruous result: that law-abiding drivers risk a ticket and a fine for failing to move to the right to accommodate speeders in the passing lane. In response to my queries about the propriety of enforcing Vehicle and Traffic Law § 1120 (b) in this circumstance, the Assistant District Attorney argued that defendant’s actions encouraged “road rage”[1] by those impeded from using the left-most lane for passing. The Trooper submitted copious articles, studies and related materials about driver aggres *945 sion.* [2] These materials establish that road, rage is a growing phenomenon of significant concern to those charged with maintaining the safety of our highways. This phenomenon has resulted in the death of 218 people and injuries to 12,610 during a seven-year period beginning January 1990.[3]
One of the acknowledged causes of road rage is blocking of the passing lane.[4] Vehicle and Traffic Law § 1120 (a) is relevant in this regard. That subdivision reads as follows:
“Upon all roadways of sufficient width a vehicle shall be driven upon the right half of the roadway, except as follows:
“(1) when overtaking and passing another vehicle proceeding in the same direction”.
Had the Trooper charged Mr. Ilieveski with a violation of this subdivision the charge might well have been upheld.
By charging defendant with violating Vehicle and Traffic Law § 1120 (b), additional factors are implicated. As a Town Justice I enforce the speeding laws on a regular basis. Those found guilty pay a minimum fine and surcharge of $55 (increasing to $60 for infractions occurring on or after Jan. 1, 1998) and often are sentenced to pay more than the minimum, amounts not insignificant to many. I cannot believe that the Legislature, when adopting Vehicle and Traffic Law § 1120 (b), intended that drivers travelling at a legal rate be punished for failing to clear the passing lane to make room for those exceeding the limit. I find that subdivision (b)’s mandate that “any vehicle proceeding at less than the normal speed of traffic at the time and place and under the conditions then existing be driven in the right-hand lane” must be interpreted to mean “any vehicle proceeding at less than the normal speed of traffic * * * up to the applicable speed limit”.
*946 I am very concerned about the phenomenon of road rage. Safety on our roadways is critical to the well-being of virtually all members of our society. However, in our laudable efforts to avert road rage we cannot cower to those who violate the law by speeding or otherwise. Such would be a dangerous path that could lead to lawlessness. The remedy for aggression on our roads is not to ticket law-abiding drivers but to prosecute fully those who engage in road rage.
For the above reasons, I find defendant not guilty of the charge of violating Vehicle and Trafile Law § 1120 (b).
Concerning defendant’s testimony that the officer inquired as to defendant’s national origin, I make no finding as to what was or was not said. I am mindful of the challenges to police officers’ safety that exist every time an officer stops a driver for a traffic infraction or otherwise. The officer, trained to detect violations of the law and schooled in security matters, is best situated to determine the necessary procedures to effectuate the issuance of a traffic ticket. I note, however, that questions about one’s national origin can leave an impression in a motorist’s mind that nationality affects how the officer treats that driver. The US Constitution provides that all people in this country are entitled to equal protection of the laws. All law enforcement officials should ensure that this constitutional right is a reality both in practice and perception. If there is no need for an officer to know a defendant’s country of origin, which presumably is the case in most traffic stops, such question should not be asked.

. Road rage is defined in the materials submitted by the Trooper as, “The reaction to aggressive driving, which is defined as—Operating a motor vehicle in a selfish, bold or pushy manner, without regard for safety or the rights of other highway users. It involves traffic violations such as speeding, *945 unsafe lane changes, failure to keep right, following too closely, and failing to signal.”

. Included among these materials are the following: (1) statement of the Honorable Ricardo Martinez, M.D., Administrator of the National Highway Traffic Safety Administration Before the Subcommittee on Surface Transportation, Committee on Transportation and Infrastructure of the United States House of Representatives (July 17, 1997); (2) the cover story article of the June 2, 1997 U.S. News and World Report entitled, Road Rage; Why American Drivers are Ruder, Meaner, and More Dangerous Than Ever; (3) Three Studies on Aggressive Driving prepared by the American Automobile Association Foundation for Traffic Safety; (4) anecdotal information from the internet; and (5) Aggressive Driving; Challenging Highway Safety in New York—The New York State Police Response.

. Aggressive Driving: Three Studies, Introduction, American Automobile Association Foundation for Traffic Safety (Mar. 1997).

. Ibid.